KALART COMPANY, Inc.

v.

UNITED STATES of America.

Civ. No. 4907.

United States District Court
D. Connecticut.
Jan. 14, 1959.

Richard C. Ross, New York City, Charles Alperin, White Plains, N. Y., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Benjamin H. Pester, Philip R. Miller, Attys., Dept. of Justice, Washington, D. C., Harry W. Hultgren, Jr., U. S. Atty., Dist. of Conn., Hartford, Conn., W. Paul Flynn, Asst. U. S. Atty., Dist. of Conn., New Haven, for defendant.

ANDERSON, District Judge.

This is an action to recover $9,590.60 paid by the plaintiff as excise taxes on photographic equipment sold by it between January 29th and October 29th, 1951 to Craig Co., its sole West Coast distributor. About October 1, 1951 the plaintiff and the Craig Co. (hereinafter called "Craig") became aware that on November 1, 1951 the manufacturer's Excise Tax on photographic equipment would either be removed or reduced by the Federal taxing authorities. The excise tax is, in the normal course of trade, passed along from manufacturer to distributor, to dealer. This meant that Craig would have to sell at a competitive disadvantage the quantity of photographic equipment already purchased because competing distributors could purchase from manufacturers after November 1, 1951 with the tax reduced. At this time Craig was in a precarious financial condition. For the purpose of removing this competitive disadvantage, and to assist Craig and preserve it as distributor for the plaintiff, the plaintiff and Craig worked out an arrangement whereby the photographic equipment which had been delivered to Craig was to be "returned" to the plaintiff.

It was intended that such return would bring the transaction within the terms of Section 3443(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3443(a) (2). This section reads as follows:

"(a) A credit against tax under this chapter, or a refund, may be allowed or made—

\* \* \* \* \* \*

"(2) to any person who has paid tax under this chapter with respect to an article, when the price on which the tax was based is readjusted by reason of return or repossession of the article or a covering or container, or by a bona fide discount, rebate, or allowance; in the amount of that part of the tax proportionate to the part of the price which is refunded or credited."

Pursuant to the arrangement, the photographic equipment was stored in public warehouses and warehouse receipts were issued to the plaintiff. At the same time warehouse releases, covering all the merchandise, were issued to Craig in order that it might readily obtain any of such equipment it might need to satisfy current demand to and including November 1, 1951. While these releases were revocable by the plaintiff, in fact they were never revoked, and Craig withdrew all the equipment from the warehouses during November, December and January after the reduction in tax rates became effective.

The question presented by the case is whether or not there was a "return or repossession" of the photographic equipment within the terms of Section 3443

(a) (2). Even if it is assumed that the title or ownership in the goods as represented by the warehouse receipts went to the plaintiff as a result of the arrangement, and even if it is further recognized that there was a bookkeeping transaction by which the price of the equipment was credited to Craig on the plaintiff's books, these facts are not conclusive in satisfying the requirements of the statute for readjustment of price "by reason of return or repossession".

Neither the plaintiff nor Craig had actual possession of the equipment, but by reason of the warehouse releases issued to Craig, Craig had constructive possession of the equipment throughout the period in question. The releases embodied the power to take actual possession, and, as the parties conceded on oral argument, to revest title in Craig immediately. The fact that the plaintiff had the power to revoke the releases does not alter this conclusion. All the purposes which the plaintiff ascribes to the transaction would have been equally well served without the simultaneous issuance of the warehouse releases to Craig. These releases can only be explained as the equivalent of possession remaining in Craig.

This transaction was, therefore, only an ostensible rearrangement of the legal interests between the parties. Craig retained the right to immediate possession of the goods, and after the tax change all of the goods were in fact taken. Moreover, at a time when Craig was actually short of money, it appears to have extended credit to Kalart instead of insisting on cash for the return. From these facts it must be inferred that the parties understood, between themselves, that Craig had an obligation to take the goods; that basically there was no real change in the legal relations of the parties. It could not have been the intent of Congress to include this transaction within the statute, for this is, in essence, a price adjustment consequent upon a temporary change in title, assuming such change, and not "in consequence of a return or repossession". Although certain of the legal relationships pertaining to the goods were changed, the most important legal relationship and the one to which the statute looks—dominion and control over the goods—remained unchanged throughout.

Judgment with costs may enter for the defendant.